UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAVAUGHN CARLOS WILSON-EL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cv-638-TWP-DML ) |
| D. MAJORS, T. ESTEB, C. TATE, D. VANTREESE, T. WHITE, J. MCVAY, BARKOFSKY, and W. WEAVER, | ) ) ) ) |
| Defendants. | ) |

**ENTRY DISCUSSING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 61). Plaintiff Shavaughn Carlos Wilson-El ("Mr. Wilson-El") brought this civil rights action under 42 U.S.C. 1983 alleging the Defendants violated his constitutional rights under the Eighth Amendment to the U.S. Constitution when correction officers used excessive force against him while he was confined at the Marion County Jail. For reasons explained in this Entry, the Motion is **GRANTED in part and DENIED in part.**

### I. BACKGROUND

Mr. Wilson-El is an inmate currently confined at the Pendleton Correctional Facility ("Pendleton"), an Indiana state prison. He filed his complaint on September 14, 2011 in Marion Circuit Court seeking compensatory and punitive damages; thereafter, the action was removed to this Court. The Defendants are: 1) Corporal Daniel Majors ("Cpl. Majors"); 2) Sgt. Timothy Esteb ("Sgt. Esteb"); 3) Corporal Charles Tate ("Cpl. Tate"); 4) Deputy Sheriff Dustin Vantreese

("Deputy Vantreese"); 5) Corporal Timothy White ("Cpl. White"); 6) Sgt. John McVay ("Sgt. McVay"); 7) Deputy Sheriff Michelle Barkofsky ("Deputy Barkofsky"); and 8) Lieutenant William Weaver ("Lt. Weaver") (collectively, "the Defendants").

Mr. Wilson –El alleges that on August 11, 2009, Cpl. Majors, Cpl. Tate, Deputy Vantreese, and Cpl. White subjected him to excessive physical force; Sgt. Esteb and Sgt. McVay subjected him to excessive force with a taser; and Lt. Weaver and Deputy Barkofsky failed to intervene. He further alleges that Cpl. Majors, Sgt. Esteb, and Lt. Weaver retaliated against him after he threatened to file a lawsuit. As noted, the Defendants seek resolution of Mr. Wilson-El's claims through the entry of summary judgment. He has opposed the motion and the Defendants have replied.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Wilson-El as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.W. 133, 150 (2000).

**A.     Undisputed Facts**

Contrary to the arguments of the Defendants, all parties, including Mr. Wilson-El, submitted a sworn affidavit giving their respective versions of what transpired. (*See* [Filing No. 62](#), 75, and 76). On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1) and Local Rule 56.1, the following facts are undisputed for purposes of the motion for summary judgment:

On August 11, 2009, Mr. Wilson-El was serving a prison sentence at Pendleton but was at the Marion County Jail ("the Jail") for proceedings unrelated to this action. All events complained of in the complaint occurred while he was at the Jail.

Deputy Barkofsky was working the area known as 4 East when she was notified by officers in 5S that there may have been an assault in housing unit 4S. Deputy Barkofsky radioed for assistance and entered the housing unit with assisting officers. Once there, Deputy Barkofsky was notified by an inmate that Mr. Wilson-El was stealing commissary within the housing unit. Deputy Barkofsky then ordered Mr. Wilson-El to return to his cell and pack his belongings so that he could be transferred to another cell block. Mr. Wilson-El verbally resisted and refused to follow Deputy Barkofsky's commands to pack his belongings. Instead, he asked the Deputy Barkofsky why he

was being moved. When Deputy Barkofsky did not give him an explanation, he sought out a ranking officer, Lt. Weaver, to ask him why he was being sent to another unit.

At that time, officers with the Critical Emergency Response Team ("CERT") entered the housing unit to assist Deputy Barkofsky with the situation. Those officers were Cpl. Majors, Cpl. Tate, Cpl. White, and Sgt. Esteb. Deputy Barkofsky left the cell block as soon as the CERT officers arrived. Deputy Barkofsky never physically touched Mr. Wilson-El. Deputy Barkofsky also did not see Mr. Wilson-El later being tased and handcuffed.

After observing Mr. Wilson-El not follow Deputy Barkofsky's orders, Cpl. Majors gave a loud verbal command for Mr. Wilson-El to pack his belongings. Instead of going to his cell as ordered, Mr. Wilson-El responded that he was not going to pack his belongings. He also said "hold on, I am speaking with the Lieutenant," and stepped away from Cpl. Majors.[1]

Cpl. Majors then removed his handcuffs from his handcuff pouch and took Mr. Wilson-El's arm and began placing it behind his back for handcuffing. At that time, Mr. Wilson-El pulled his arm away and told Cpl. Majors, "don't touch me!"[2] Mr. Wilson-El yelled that he was not going to be placed in handcuffs. Knowing it was imperative to gain control of Mr. Wilson-El and relying on his training, Cpl. Majors used a defensive tactic known as an arm bar take down and with the assistance of Cpl. White, they took Mr. Wilson-El to the ground.[3]

---

[1] Cpl. Majors states in his sworn affidavit that he then ordered Mr. Wilson-El to turn around and place his hands behind his back so that he could be handcuffed. Mr. Wilson-El states in his sworn affidavit that Cpl. Majors did not order him to turn around to be cuffed. This disputed fact, however, is not material because it is undisputed that Mr. Wilson-El was refusing to comply with other orders to pack his belongings.

[2] Cpl. Majors testified in his affidavit that when Mr. Wilson-El pulled his arm back, he turned face to face with Cpl. Majors, which Cpl. Majors interpreted as an act of defiance and possible safety threat. Mr. Wilson-El responds in his affidavit that he was never face to face with Cpl. Majors in a threatening manner. The Court credits Mr. Wilson-El's statement that he was never face to face with Cpl. Majors for purposes of summary judgment only.

[3] Cpl. Majors states in his affidavit that at first he attempted to do an arm bar take down by himself, but he was unsuccessful because Mr. Wilson-El continued to resist. Another officer, Cpl. White, came to Cpl. Majors' assistance and together they took Mr. Wilson-El to the ground. Mr. Wilson-El disputes that there were two attempts to take him to the ground. The Court has credited, for purposes of summary judgment only, Mr. Wilson-El's version of this fact.

4

Once Mr. Wilson-El was on the ground, Cpl. Majors had control of Mr. Wilson-El's left arm and commanded him to release his right arm. Mr. Wilson-El states that another officer was holding his right arm and then that officer released it. Cpl. Majors ordered Mr. Wilson-El at least three to four times to release his arm from underneath his body. Mr. Wilson-El attempted to comply but it was a struggle to put his left arm behind his back, and Cpl. Majors told him to stop struggling. When Cpl. Majors yelled for Mr. Wilson-El to put his hands behind his back, Mr. Wilson-El yelled back that he could not do that until Cpl. Majors let go of his left arm. One arm was behind Mr. Wilson-El's body and the other was being controlled by Cpl. Majors.

Cpl. Majors believed that Mr. Wilson-El was refusing to surrender his right arm from underneath his body despite repeated commands from CERT officers that he stop resisting and release his arm. A number of inmates were observing these events from within their cells.[4] Sgt. Esteb perceived that the situation was becoming more volatile. As a final attempt to gain compliance from Mr. Wilson-El, he ordered Mr. Wilson-El at least twice to stop resisting, give him his arm, or he would be tased. Sgt. Esteb and Sgt. McVay both yelled "taser, taser, taser!" The parties dispute whether Mr. Wilson-El stopped resisting at this point. Cpl. Majors and Cpl. White then released Mr. Wilson-El and stepped slightly away in order to avoid the taser prongs. Sgt. McVay and Sgt. Esteb then discharged their department issued tasers simultaneously.

Sgt. Esteb's taser prongs attached to Mr. Wilson-El's right hamstring area, but they did not pierce his skin. Sgt. McVay's taser prongs made contact with Mr. Wilson-El's upper back, causing him to receive a full five-second taser cycle. Mr. Wilson-El then laid still and released his hands

---

[4] Sgt. Esteb states that some inmates who were not in their cells began to gather. Mr. Wilson-El disputes this point, asserting that all inmates other than his cellmate were in their cells at that time.

5

so that Cpl. White and Cpl. Majors were then able to place Mr. Wilson-El in handcuffs. Once in handcuffs, Mr. Wilson-El stated that his right leg was numb.

A wheelchair was requested to transport Mr. Wilson-El to the medical unit so that the taser prongs could be removed. Cpl. Tate, Cpl. Majors, Cpl. White, Lt. Weaver, Sgt. McVay, and Sgt. Esteb, accompanied Mr. Wilson-El to the medical unit and observed the nurse remove the taser prongs. Mr. Wilson-El asserts that on the way to the medical unit and during the visit to the medical unit, he and Cpl. Majors and Sgt. Esteb exchanged words. Mr. Wilson-El threatened to sue them for "the 4S incident" and he states that Cpl. Majors and Sgt. Esteb responded by saying they would give him "something to sue about and kick my ass again."

After Mr. Wilson-El was cleared by medical personnel and placed back in the wheelchair, he was transported to the area in the Jail known as 2 West through the slider 9 hallway corridor. What happened next is disputed. The Defendants contend that while in the hallway corridor, Mr. Wilson-El suddenly jumped or lunged forward out of the wheelchair, throwing himself onto the ground. Mr. Wilson-El claims that he was thrown out of the wheelchair by CERT officers and that Cpl. Esteb and Cpl. Majors jumped on him and began punching him while other officers kicked him. Mr. Wilson-El states that at this time, Sgt. Esteb drove his knee into Mr. Wilson-El's back, twisted and tightened the handcuffs, and bent his left hand fingers. Mr. Wilson-El further asserts that Cpl. Majors forcefully twisted and bent his left pinky finger.

Sgt. Esteb recognized that Mr. Wilson-El was angry for being tased. Sgt. Esteb ordered Deputy Vantreese to retrieve the department's video camera to record the remainder of their interaction with Mr. Wilson-El. Between the time that Mr. Wilson-El landed on the ground and the time that Deputy Vantreese returned with the video camera, no one touched Mr. Wilson-El. Upon Deputy Vantreese's return with the video camera, Sgt. Esteb made a summary statement on

the video of the CERT officers' interactions with Mr. Wilson-El up to that point. Mr. Wilson-El was then placed into emergency response belts for his own safety and to prevent him from throwing himself or otherwise falling out of the wheelchair again.

Mr. Wilson-El complained of shoulder pain, so he was then transported back to the medical unit where he was examined for a second time and was cleared by medical staff with no injuries noted. Mr. Wilson-El was transported to a deadlock cell without further incident. Deputy Vantreese recorded the remainder of the CERT officers' interactions with Mr. Wilson-El, until he was placed in the deadlock cell.

Sgt. Esteb completed a Use of Force report because of the use of his taser. The Marion County Sheriff's Department found that the action Sgt. Esteb took in tasing Mr. Wilson-El complied with the Department's use of force policies.[5]

As a result of the incidents on August 11, 2009, Mr. Wilson-El was charged with the following violations at the Jail:

> Violation 1: Major 14 – Fighting with any Deputy or Staff Member;
> Violation 2: Major 22 – Phys. Refusing Lawful Order of Staff Member;
> Violation 3: Major 24 – Threatening a Staff Member;
> Violation 4: Minor 7 – Insolence toward a Staff Member;
> Violation 5: Minor 13 – Interfering with Staff Duties.

On August 14, 2009, Mr. Wilson-El was transferred back to Pendleton. Therefore, he did not receive a disciplinary hearing on the Code of Conduct charges prior to his transfer.

**B.  Analysis**

    **1. Excessive Force Claims**

Mr. Wilson-El alleges that Defendants Deputy Vantreese, Cpl. Tate, Cpl. Majors, Cpl. White, Sgt. Esteb, and Sgt. McVay applied excessive force against him in violation of the Eighth

---

[5] There is no mention in the record of whether Sgt. McVay completed a Use of Force report.

7

Amendment to the Constitution. When excessive force is alleged by a prisoner, the question is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically cause harm." *Harper v. Albert,* 400 F.3d 1052, 1065 (7th Cir. 2005) (internal quotation omitted); *see also Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

> Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force.

*Forrest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010).

Mr. Wilson-El acknowledges that on August 11, 2009, he was ordered by a Jail officer to pack his belongings. He admits that he did not comply with that order. Rather, he asked "why?" When he did not receive a response, he tried to talk to a higher ranking officer, a lieutenant. While he was talking to the lieutenant, another Jail officer ordered him again to pack his belongings. Mr. Wilson-El describes the officer issuing orders as "rude" because he interrupted Mr. Wilson-El's "conversation". Mr. Wilson-El told the Jail officer to "hold on" and wait until he and the lieutenant were finished talking.

Mr. Wilson-El's position would be reasonable if he had been at a cocktail party talking to the host when another friend interrupted and demanded his attention. He was not. As a jail inmate, he does not get to decide when and with which orders he will comply. *Lewis v. Downey,* 581 F.3d 467, 476 (7th Cir. 2009) explains that someone in Mr. Wilson-El's position must be conscious of the realities of his confinement and the limitation of his options:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.... Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Id.* (internal quotation omitted).

8

Mr. Wilson-El refused to comply with Deputy Barkofsky's and Cpl. Majors' orders to pack his belongings. Although Mr. Wilson-El testifies that he was never given a specific order to "turn around and be cuffed," he also admits that he was talking to another officer at the time Cpl. Majors was giving him orders, so it is possible that Mr. Wilson-El did not hear the specific orders to turn around and be handcuffed. Cpl. Majors took Mr. Wilson-El's arm and Mr. Wilson-El aggressively pulled his arm away and told the officer not to touch him. Regardless of whether or not Mr. Wilson-El was "face to face" with the officer at this time, a disputed point, Cpl. Majors took Mr. Wilson-El's arm and the officer reasonably interpreted Mr. Wilson-El's response of pulling his arm back, refusing to be placed in handcuffs, and telling the officer not to touch him as being defiant and threatening. Cpl. Majors and Cpl. White took Mr. Wilson-El to the ground. Cpl. Majors held Mr. Wilson-El's left arm but ordered Mr. Wilson-El three to four times to release his right arm from underneath his body. Mr. Wilson-El was ordered to stop resisting and stop struggling. Mr. Wilson-El continued to try to free his arms, at least to the point when tasers were threatened.

It is disputed how many other inmates began to gather, but it is not disputed that other inmates started paying attention to the situation, which could have incited a much more dangerous situation. Given the officers' inability to control Mr. Wilson-El, they ultimately warned him that if he did not comply with their orders, they would tase him. Sgt. Esteb and Sgt. McVay discharged their tasers. Mr. Wilson-El received a five-second taser cycle in his upper back. He was then placed in handcuffs and put in a wheelchair.

### 2. Sgt. Vantreese and Cpl. Tate

The record is undisputed that Sgt. Vantreese never physically touched Mr. Wilson-El or fired a taser at Mr. Wilson-El. Sgt. Vantreese used no force, much less excessive, against Mr.

9

Wilson-El. The same can be said about Cpl. Tate. There is no evidence that Cpl. Tate touched or tased Mr. Wilson-El. The motion for summary judgment is **granted** with respect to any claim of excessive force against Sgt. Vantreese and Cpl. Tate.

### 3. Cpl. Majors and Cpl. White – Taking Mr. Wilson-El to the Ground

Cpl. Majors and Cpl. White did use force against Mr. Wilson-El in taking him down to the ground. This was arguably the least amount of force that could have been used under the circumstances. Mr. Wilson-El continued to verbally and physically resist orders and made it known that he had no intention of complying with the orders to pack his belongings (or, arguably, to be handcuffed). Instead, he questioned the officers' authority by asking the reason for the orders. Mr. Wilson-El found it "rude" to be told what to do by these Jail officers. The officers perceived that the situation was escalating and were reasonably concerned when other inmates began noticing the incident.

Even if only one other inmate was out of his cell, the officers could not waste their time repeating orders which Mr. Wilson-El questioned and refused to obey. The officers attempted to avoid using force by ordering Mr. Wilson-El several times to comply with their commands. There is no evidence from which a reasonable jury could infer that force was applied in a malicious or sadistic manner when these two officers took Mr. Wilson-El to the ground. Rather, taking Mr. Wilson-El down to the ground was a reasonable act to subdue him and restore order. The motion for summary judgment is **granted** with respect to this claim of excessive force against Cpl. Majors and Cpl. White.

### 4. Sgt. Esteb and Sgt. McVay - Tasers

The parties dispute at what point Mr. Wilson-El stopped resisting once he was taken down to the ground. The Defendants all state that Mr. Wilson-El refused to comply with their orders

and continued to resist by keeping one arm under his body instead of placing it behind his back. Mr. Wilson-El testifies in his affidavit that he struggled to put his left hand behind his back until Cpl. Majors told him to "stop struggling" ([Filing No. 75, at ECF 33](#)). He then "did not move and just lie [sic] there still with Cpl. Majors holding my left arm and an officer holding my right leg." ([Filing No. 75, at ECF 34](#)).

Sgt. Esteb warned him at least twice to stop resisting, give him his arm, or else he would be tased. Sgt. Esteb and Sgt. McVay both yelled "taser, taser, taser" before firing their tasers. The taser discharged by Sgt. Esteb made contact with Mr. Wilson-El's right hamstring area but did not pierce his skin. After he was tased, Mr. Wilson-El complained of his leg being numb. The taser discharged by Sgt. McVay contacted Mr. Wilson-El's upper back.

"In many circumstances-often when faced with aggression, disruption, or physical threat-compelling compliance with an order is a valid penological justification for use of a taser." *Lewis,* 581 F.3d at 477. Use of a taser "should generally follow adequate warnings." *Id.* at 479 (internal quotation omitted). Here, Mr. Wilson-El was aggressive and disruptive up to a certain point. He posed an immediate threat to the safety and order at the Jail by questioning and not responding to the authority of the Jail officers. He was warned about the use of a taser. *See also Forrest v. Prine,* 620 F.3d 739 (7th Cir. 2010) (use of taser on jail detainee who refused to comply with strip search orders, was intoxicated and shouting obscenities with fists clenched, was reasonable). The point at which he stopped resisting, however, is in dispute. It is possible, therefore, that a reasonable jury could find that at the time that the officers tased Mr. Wilson-El, he was no longer resisting or presenting a threat to the security of the Jail and the safety of the officers and other inmates. With respect to the claim that Sgt. Esteb and Sgt. McVay used excessive force by using their tasers on Mr. Wilson-El, their motion for summary judgment must be **denied.**

The Defendants argue that they are entitled to qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks,* 134 S.Ct. 2369, 2381 (2014) (internal quotation omitted). Courts cannot award damages against a law enforcement official "unless the official violated a statutory or constitutional right and the right was clearly established at the time of the challenged conduct." *Id.* Qualified immunity can shield an officer from civil liability "if he can demonstrate that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law." *Belcher v. Norton,* 497 F.3d 742, 749 (7th Cir. 2007). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (internal quotation omitted). Clearly, the officers believed that Mr. Wilson-El continued to resist and they had no choice but to use the taser to subdue him. The relevant question for purposes of qualified immunity, however, must be framed in terms that accept Mr. Wilson-El's version of the facts as true. *Rooni v. Biser,* 742 F.3d 737, 738 (7th Cir. 2014). As discussed above, Mr. Wilson-El states that he stopped struggling after Cpl. Majors told him to do so, and he did not move and was just lying there when he was tased. Therefore, the question is: *If* Mr. Wilson-El was simply lying there, not resisting, could a reasonable Jail officer have believed that the use of a taser at that time did not violate Mr. Wilson-El's clearly established constitutional rights? The answer is no. It is excessive force to use a taser on a subdued individual. *See Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 727 (7th Cir. 2013). Because of the genuine question of fact identified above, Sgt. Esteb and Sgt. McVay are not entitled to qualified immunity with respect to the use of their tasers.

5. **Wheelchair Claim**

Cpl. Tate, Cpl. Majors, Cpl. White, Lt. Weaver, Sgt. McVay, and Sgt. Esteb, accompanied Mr. Wilson-El to medical after he was tased. In their sworn statements, the officers state that Mr. Wilson-El leaned or lunged forward causing himself to fall out of the wheelchair onto the ground. Mr. Wilson-El states in his affidavit that after they left the medical unit, Sgt. Esteb and Cpl. Majors flipped the wheelchair over, dumping him onto the floor, and then they and other officers jumped on him and repeatedly kicked and punched him.

After Mr. Wilson-El propelled himself or was dumped out of the wheelchair, Sgt. Vantreese was ordered to record the remaining interactions with Mr. Wilson-El. Sgt. Vantreese recorded the remainder of the incident from the time Mr. Wilson-El was in the hallway corridor and taken back to see the nurse until he was placed in a cell. The Court viewed the video.

If Mr. Wilson-El had been repeatedly kicked and punched, any reasonable jury would expect him to report his pain or injuries to the nurse he saw immediately after the alleged beating. Mr. Wilson-El only told the nurse that his shoulder hurt and he could not move his pinky finger and he had no feeling in it. Mr. Wilson-El spoke to the officers and the nurse while she took his blood pressure and examined his shoulder. The nurse told him that his shoulder was not out of place and that his pinky finger was numb because he was in handcuffs and that it can take a while for the feeling to return. He did not complain of any beating or of any injuries. Rather, Mr. Wilson-El was insistent about asking Lt. Weaver numerous questions about why they were trying to handcuff him in the first place and why he was tased. Contrary to Mr. Wilson-El's suggestion, the video does not show any bruises or swelling of his face. The officers' demeanor on the video was professional and unemotional. Lt. Weaver responded to Mr. Wilson-El's repetitive questions in a calm, non-evasive manner. Not every disputed fact is a material fact for purposes of summary

13

judgment. There is no "genuine" dispute if no reasonable jury could find in favor of Mr. Wilson-El.

Although there is no video of the wheelchair incident itself, based on the admissible evidence of record, no reasonable jury could find that any officer violently assaulted Mr. Wilson-El. The motion for summary judgment is **granted** as to any claim that Sgt. Esteb, Cpl. Majors, Cpl. White, and Sgt. Vantreese dumped Mr. Wilson-El out of a wheelchair and then repeatedly punched, kicked, and hit him.

### 6. Failure to Intervene Claims

In his complaint, Mr. Wilson-El alleges that Lt. Weaver and Deputy Barkofsky failed to intervene and prevent the excessive force used by Defendants Cpl. Majors, Cpl. Tate, Cpl. White, and Deputy Vantreese. In his response to the motion for summary judgment, he adds that Cpl. Tate also failed to intervene.

An officer can be liable for failure to intervene under Section 1983 if he "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis,* 581 F.3d at 472. It has been determined that Cpl. Majors, Cpl. Tate, Cpl. White, and Deputy Vantreese did not use excessive force against Mr. Wilson-El. Therefore, Cpl. Tate, Lt. Weaver and Deputy Barkofsky cannot be liable for failing to intervene as to any claim of excessive force by those officers. *Harper v. Albert*, 400 F.3d 1052, 1066 (7th Cir. 2005) (absent an allegation and evidence of excessive force by an officer, a plaintiff "cannot possibly establish bystander liability" for failure to intervene). In addition, Deputy Barkofsky was not present when Mr. Wilson-El was taken to the ground and later tased. She had no opportunity to intervene even if unlawful force

14

had been applied. The motion summary judgment is **granted** on the claim that Cpl. Tate, Lt. Weaver and Deputy Barkofsky failed to intervene.[6]

 7. **Retaliation**

As his final claim, Mr. Wilson-El alleges that Cpl. Majors, Sgt. Esteb, and Lt. Weaver retaliated against him by using excessive force after he threatened to file a lawsuit against them. To prevail on a retaliation claim, Mr. Wilson-El must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation omitted). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Id.* at 866 (internal quotation omitted). Mr. Wilson-El, however, does not allege that any Defendant retaliated against him after he filed a lawsuit or grievance. Rather he *threatened* to file a lawsuit, which is arguably not a constitutionally protected activity. *See Hanna v. Maxwell,* 415 Fed.Appx. 533 (5th Cir. March 3, 2011) (an allegation of retaliation for threatening to file a lawsuit during a confrontation with corrections officers fails to state a claim); *Jones v. Book,* 404 Fed.Appx. 169 (9th Cir. Nov. 22, 2010) (officers reasonably interpreted a prisoner's threat to file a lawsuit as not protected by the First Amendment).

Even if threatening to file a lawsuit were protected activity, Mr. Wilson-El has not presented any admissible evidence showing that any actions taken by Cpl. Majors, Sgt. Esteb, and Lt. Weaver were motivated by such a threat. It is plain that the Defendant were motivated by their need to maintain discipline at the Jail in the face of Mr. Wilson-El's refusal to obey lawful orders.

---

[6] Although Mr. Wilson-El does not allege that Lt. Weaver and Cpl. Tate failed to intervene in the use of the tasers, even if he did, he has failed to present any evidence sufficient to create a genuine issue of material fact that either of those officers had a reasonable and realistic opportunity to prevent other officers from using their tasers.

The motion for summary judgment is **granted** with respect to Mr. Wilson-El's claims of retaliation against Cpl. Majors, Sgt. Esteb, and Lt. Weaver.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment ([Filing No. 61](#)) is **GRANTED in part and DENIED in part**. The Motion is **DENIED** as to the two excessive force claims asserted against Sgt. Esteb and Sgt. McVay for tasing Mr. Wilson-El. With respect to the remaining claims against all other Defendants, the Motion is **GRANTED** and those claims are dismissed.

## V. FURTHER PROCEEDINGS

The Magistrate Judge is requested to schedule a status conference to address the feasibility of settlement with respect to the excessive force claims against Sgt. Esteb and Sgt. McVay and, if necessary, to direct preparations for trial.

**SO ORDERED.**

Date: 9/15/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Shavaughn Carlos Wilson-El, #917706
Pendleton Correctional Facility
4490 West Reformatory Road
Pendleton, Indiana 46064

Amanda J. Griffith
Office of Corporation Counsel, City of Indianapolis
agriffith@indy.gov

Beth Ann Garrison
Office of Corporation Counsel, City of Indianapolis
beth.garrison@indy.gov

Magistrate Judge Debra McVicker Lynch